AMERICAN RAILROAD CO. OF P. R. v. HERNÁNDEZ.

APELACIÓN procedente de la Corte de Distrito de San Juan.

No. 62.    Resuelto en Junio 1, 1905.

JURISDICCIÓN.—Aún cuando las partes no hubieren planteado cuestión alguna de jurisdicción, el Tribunal, sin embargo, puede considerarlas de oficio, y debe resolverlas con preferencia á cualquier otra cuestión.

ID.—LEYES DE PROCEDIMIENTO.—EFECTO RETROACTIVO.—Es un principio de derecho español, reconocido por la jurisprudencia de los más altos Tribunales de la Unión, que las leyes que regulan la jurisdicción y el procedimiento son de interés público, y tienen efecto retroactivo, ó más bien, que no se las considera de carácter retroactivo, en tal sentido, que estén comprendidas dentro de las disposiciones del art. 3 del Código Civil.

ID.—Para que el Tribunal Supremo pueda dictar sentencia en un caso determinado, es necesario que tenga jurisdicción sobre el mismo, no solo en la época en que éste se presenta y somete á su consideración, sino también cuando haya de resolverlo, pues de lo contrario la sentencia sería *coram non judice*, y nula por falta de jurisdicción.

ID.—Si la ley que confiere jurisdicción al Tribunal Supremo se modifica después de haberse entablado la demanda ó después de haberse dictado sentencia en el Tribunal inferior, ó de haberse presentado la causa ante el Tribunal Supremo, y sometido la misma á su resolución, pero antes de haberse dictado en ella sentencia definitiva, á la ley que exista en la época en que se dicte dicha sentencia definitiva, es á la que debe ajustarse el Tribunal.

ID.—DEROGACIÓN DE LA LEY QUE CONFIERE JURISDICCIÓN.—La derogación expresa, ó tácita, de una ley que confiera jurisdicción á un Tribunal, priva á éste del derecho de ejercer tal jurisdicción, y en su virtud, todos los procedimientos pendientes ante dicho Tribunal, ya sea de primera ó segunda instancia, deben cesar juntamente con la ley derogada, á no ser que ésta contuviera alguna cláusula de reserva que les excluyera de sus efectos.

Los hechos están expresados en la Opinión.

Abogado del apelante: *Sr. Freyre Barbosa* (Luis).

Abogado del apelado: *Sr. Bosch*.

EL JUEZ ASOCIADO SR. MACLEARY, emitió la siguiente opinión del Tribunal.

Es necesario hacer una breve relación de esta causa para comprender perfectamente las cuestiones que envuelve. El 16 de Marzo de 1904 Don Segundo Setty, actuando como agente de la "American Railroad Company of Porto Rico", entabló demanda ante la Corte Municipal de San Juan, contra Francisco Hernández, reclamando la suma de ciento diez y seis dollars y diez centavos, por daños y perjuicios causados por un buey perteneciente á

dicho Francisco Hernández, que transitaba extraviado por el trayecto del ferrocarril de dicha Compañía, descarrilando la locomotora de esta última, causando daños á dicha locomotora y también á la vía y demorando el tren de pasajeros.

El demandado, por conducto de su abogado, Don Wenceslao Bosch contestó la demanda, negando los hechos consignados en la misma, y presentando un escrito de reconvención ante dicha Corte Municipal, en que alegó varias cosas para su defensa, y suplicó á la citada Corte, desestimase la demanda deducida por el Agente de la Compañía de Ferrocarriles, y que dictase sentencia contra dicha compañía, condenándola al pago de cuarenta y cinco dollars, por daños, ó sea el valor del buey matado en la colisión, é imponiéndole las costas del procedimiento.

Después de los trámites usuales en tales casos, y después de haberse practicado la prueba, etc., la Corte Municipal de San Juan dictó sentencia contra la Compañía demandante, "La American Railroad Company", y á favor del demandado, condenando á la primera, al pago de cuarenta y cinco dollars, ó sea el valor del buey, y de las costas del procedimiento.

Contra esta sentencia, la Compañía del Ferrocarril interpuso recurso de apelación ante la Corte de Distrito de San Juan, y dicha Corte, en 17 de Setiembre de 1904, después de haber examinado los alegatos presentados, y de haber oído las pruebas presentadas por ambas partes, y los informes orales de los Letrados defensores de las mismas, dictó sentencia en contra de la "American Railroad Company of Porto Rico", y á favor del demandado Francisco Hernández, en virtud de la reconvención formulada por este último, fallando que dicho Francisco Hernández debía recobrar de la citada Compañía, en concepto de indemnización de daños, por el buey matado, la suma de cuarenta y cinco dollars, sin especial condena de costas.

Contra esta sentencia del Tribunal de Distrito, la Com-

pañía demandante, en 13 de Octubre de 1904, interpuso recurso de apelación para ante el Tribunal Supremo. Se celebró la vista de dicha causa ante el citado Tribunal, en 3 de Febrero de 1905. El Abogado de la Compañía apelante, Don Luis Freyre Barbosa, y el del apelado, Don Wenceslao Bosch, comparecieron personalmente en representación de sus respectivos clientes, é informaron oralmente sobre el asunto en cuestión.

Aunque no se ha hecho en ninguna fase de los procedimientos sugestión alguna sobre falta de competencia de esta Corte para oir y resolver esta apelación, sin embargo, cuando se presenta una cuestión de competencia, debe ser atendida y resuelta por el Tribunal, antes de que pueda considerarse otro asunto alguno. Si esta Corte no tiene jurisdicción sobre la causa, ó si habiendo tenido jurisdicción sobre la misma, en la época en que se interpuso el recurso de apelación, la ha perdido después, entonces no podrá dictarse sentencia en dicha causa. Este es un principio bien establecido, y apoyado por muchas autoridades.

La jurisdicción de la Corte Suprema de Puerto Rico está basada en la Ley Orgánica, adoptada por el Congreso de los Estados Unidos, en 12 de Abril de 1900; 31 United States Statutes at Large, Chapter 191, p. 84. En la Sección 33 de dicha Ley, confiriendo jurisdicción á esta Corte, se dispone que la Asamblea Legislativa de Puerto Rico, ''tendrá autoridad para legislar de tiempo en tiempo, conforme tenga por conveniente, con referencia á dichas Cortes, su jurisdicción, sus procedimientos, y demás asuntos que la afectan.

De la misma manera se ha conferido jurisdicción á la Corte Suprema de los Estados Unidos, por la Constitución de los Estados Unidos, ''con tales excepciones y con sujeción á tales reglamentos, como fueran establecidos por el Congreso.''

La Asamblea Legislativa de Puerto Rico, de tiempo en tiempo ha hecho cambios en la jurisdicción de este Tribu-

nal, mediante varias leyes, una de las cuales cambió el Tribunal de Corte de Casación en Corte de Apelación, confiriéndole autoridad para revisar enteramente cualquiera causa presentada ante la misma en apelación, tanto en cuanto á la ley como en cuanto á los hechos, ya sea causa criminal ó civil, y para confirmar, revocar, ó modificar la sentencia del Tribunal inferior, dictando nueva sentencia en las causas que así lo exijan, y si necesario fuere, devolviendo las causas al Tribunal sentenciador, para un nuevo juicio. Esta ley cambió todo el método de procedimiento en este Tribunal, haciendo la práctica mucho más flexible, y poniendo al Tribunal en el caso de ser mucho más eficaz en la administración de justicia. De tiempo en tiempo, se han hecho, por la Asamblea Legislativa, otros cambios en la jurisdicción de este Tribunal, y en la de los Tribunales de Distrito, según lo exigían las circunstancias.

Del mismo modo, el Congreso de los Estados Unidos, con arreglo á la Constitución que había sido decretada y establecida con anterioridad al mismo, en 4 de Setiembre de 1789, en su 1a. sesión adoptó la Ley de Judicatura, por la cual se establecieron las Cortes judiciales de los Estados Unidos, y se prescribió el Reglamento para el ejercicio de su jurisdicción. El Congreso, de tiempo en tiempo, y de acuerdo con la Constitución, y con sujeción á la misma, ha hecho cambios en la jurisdicción de apelación de aquel alto Tribunal, y semejante actitud por parte de la autoridad legislativa ha sido siempre respetada por el Tribunal Supremo de los Estados Unidos, ajustándose á ella.

El Código de Enjuiciamiento Civil, que fué aprobado por la Legislatura de Puerto Rico, en 10 de Marzo de 1904, y que empezó á regir en primero de Julio del mismo año, permitió que se interpusiera ante este Tribunal, recursos de apealción contra sentencias de las Cortes de Distrito, en causas civiles, en las que se había interpuesto

recurso de apelación para ante dichas Cortes de Distrito, contra sentencias dictadas por las Cortes Municipales, sin atención al montante del pleito. Véase el Código de Enjuiciamiento Civil, sección 295. Esta ley, por la cual se concede recurso de apelación en tales casos, fué modificada en 9 de Marzo de 1905, añadiéndose á dicho párrafo segundo de la sección 295, una limitación expresada en las siguientes palabras: "Con tal que el valor de la propiedad reclamada, ó el montante de la sentencia, sin incluir los productos ni los intereses devengados por dicho montante, excedan de $300 dollars." Véanse las Leyes de 1905, página 137.

La cuestión que se presenta para nuestra decisión es esta: ¿Afecta esta enmienda del Código de Enjuiciamiento Civil, una causa en que se había interpuesto ante este Tribunal recurso de apelación, en que se había celebrado la vista con información oral, y que se hallaba pendiente de resolución, antes de la adopción de esta ley? Se ha indicado que causas así situadas, no podían ser afectadas por disposiciones legislativas que cambian la jurisdicción de este Tribunal, y que el artículo 3 del Código Civil que dice: "Las leyes no tendrán efecto retroactivo, si no dispusieran expresamente lo contrario", era aplicable á ésta causa, y la retenía dentro de la jurisdicción de este Tribunal. Pero, aparece de los sabios comentarios de aquel artículo, en el texto original español, que es un principio de derecho español, que los estatutos que regulan la jurisdicción y el procedimiento, son de interés público, y empiezan á regir retroactivamente, ó más bien, que no son consideradas como retroactivas en tal sentido, que caigan bajo las restricciones de este artículo. Esta doctrina está también de acuerdo con las decisiones de las Cortes Americanas de último recurso.

Y, además, con arreglo á la jurisprudencia americana, es claro para la mente pensadora, que la Ley de 9 de Marzo último, no puede considerarse como teniendo efecto re-

troactivo, aunque pueda afectar la jurisdicción de este Tribunal. La influencia que ejerce sobre aquella jurisdicción, es una influencia actual y contínua. Este Tribunal, para llegar á un fallo, debe tener jurisdicción sobre una causa no solamente cuándo se la presente para que de ella conozca el Tribunal, sino que debe tener jurisdicción sobre la misma, en la época en que se dicte la sentencia definitiva. Si no hay jurisdicción sobre una causa, en la que se dicte sentencia, en la época en que ésta se dicte, tal sentencia es *corom non judice* y nula y sin ningún valor, por falta de jurisdicción.

Un caso exactamente á propósito, fué resuelto por el Tribunal Supremo de Indiana, en una época tan remota como el año 1839. El Tribunal en su dictámen dice:

"Nosotros procedimos con arreglo á este principio, al rechazar varios pleitos durante la última sesión de este Tribunal. En virtud de la Ley de 1831, una causa surgida en un Juzgado de Paz y que se había llevado en apelación ante la Corte de Circuito, podía presentarse ante este Tribunal mediante recurso de apelación, si la suma, objeto de la controversia, con los intereses y costas, ascendía á veinte dollars. La Ley de 1838, nos privaba de la jurisdicción en semejantes casos, á menos que la suma en cuestión, con exclusión de los intereses y costas, importara veinte dollars. Las causas que se habían presentado con arreglo á la Ley de 1831 y que no estaban comprendidas en la de 1838, fueron rechazadas por falta de jurisdicción."

Hunt et x. v. Jennings, (5 Blackford 195) 33 Am. Dec. 466.

En apoyo de este principio, véanse las siguientes autoridades:

Insurance Company v. Ritchie 72 U. S. (5 Wallace) 541.
Norris v. Crocker 54 U. S. (13 Howard) 429.
Yeaton v. United States, 5 Cranch 281.
Detroit v. Chapin (Mich.) 37 L. R. A. p. 398.
Key v. Goodwin 4 Moore & P. (Eng.) 341.
Stover v. Immell, 1. Watt. (Penn.) 258.
Butler v. Palmer, 1 Hill, 324 (N. Y.)

Hampton v. Conn. 1 Pa. 329.

Cooley Cons. Lim. 469, y casos citados en la nota 5a.

Sedwich on Stat. & Cons. Law, 112.

Southerland Stat. Cons. p. 221, Sec. 164.

Dwarris on Stat. 538.

1 Kent's Com. 465, y casos citados en la nota d.

Jurisdicción ha sido definida como la autoridad en virtud de la cual, los funcionarios judiciales conocen de las causas y las deciden; ó la facultad de oir y resolver una causa; ó el derecho de un Juez de pronunciar sentencia conforme á la Ley, en una causa ó cuestión pendiente ante él cuya autoridad, facultad ó derecho han sido adquiridos en virtud de un procedimiento legal en debida forma. Dicha jurisdicción incluye la facultad de compeler la ejecución de lo decretado, y puede decirse que es el derecho de adjudicar con respecto al asunto de que se trata en un caso dado. Para constituir una jurisdicción, hay tres cosas esenciales: Primero, el Tribunal debe conocer de la clase de causas á que pertenece la que debe fallarse. Segundo, las partes correspondientes deben estar presentes en el Tribunal, ya sea personalmente ó ya sea representadas por un Abogado; y Tercero, el punto decidido debe, en sustancia y efecto, hallarse comprendido dentro de la cuestión de hecho ó de derecho de que se trata. Véanse el tomo segundo del Diccionario de Leyes de Bouvier, página 57, y las autoridades allí citadas.

El Juez Cooley, en su gran obra sobre limitaciones Constitucionales, en la página 469, enuncia la proposición que determina la Ley aplicable á este caso, si dicha proposición está suficientemente apoyada por autoridades. Es como sigue: "Si hubiera habido un cambio ó modificación ó revocación de la Ley aplicable á los derechos de las partes, después de haberse dictado la sentencia original, y mientras se halle pendiente una apelación, la causa debe ser vista y fallada en la Corte de apelación con arreglo á la Ley existente." Esto quiere decir, si la ley que con-

fiere jurisdicción á este Tribunal, se cambia después de
haberse entablado la demanda, ó después de haberse dic-
tado la sentencia en el Tribunal inferior, ó después de ha-
berse presentado la causa ante este Tribunal, ó sometido
á este último, para su decisión, pero antes de haberse dic-
tado sentencia definitiva en la misma, entonces la ley que
exista en la época en que se dicte sentencia definitiva por
este Tribunal, debe regir en la decisión de dicha causa.
La proposición anteriormente citada de la obra de Cooley,
es apoyada por las siguientes decisiones judiciales:

State v. Norwood, 12 Md. 195.
Wright v. Graham, 42 Ark 140.
Yeaton v. United States, 5 Granch, 281.
Schooner Rachel v. United States, 6 Cranch, 329.
Commonwealth v. Marshall, 11 Pick. 350.
Commonwealth v. Kimball, 21 Pick 373.
Hartung v. People, 22 N. Y. 95.
Union Iron Co. v. Pierce, 4 Biss 327.
Norris v. Crocker, 13 How. 429.
Insurance Co. v. Ritchie, 5 Wall. 541.
United States v. Tynen, 11 Wall. 88.
Engle v. Shurts, 1 Mich. 150.
Sturgis v. Spofford, 45 N. Y. 446.
People v. Hobson, 48 Mich. 27.
McCardle Ex parte 74 U. S. (Wallace) 512.
Ewell v. Daggs 108 U. S. 143, U. S.
United States v. The Peggy, (1 Cr.) 103.
Johnson v. Meeker, 1 Wis. 436.
Musgrove v. Vicksburg, etc. R. R. Co. 50 Miss. 677.
Lewis v. Foster, 1 N. H. 61.
Speckert v. Louisville, 78 Ky. 287.
State v. Daley, 29 Conn. 272.
Atwell v. Grant, 11 Md. 104.
Price v. Nesbitt, 29 Md. 263.
Mayor of Annapolis v. State, 30 Md. 112.
Wade v. St. Mary's School, 3 Md. 178.

En la causa de Ewell v. Daggs, el Sr. Juez Mattews le-
yó el dictámen del Tribunal Supremo de los Estados Uni-

dos, y ese dictámen está relatado en 108 U. S. en la página 150. Era una causa que surgió en la Corte de Circuito de los Estados Unidos para el Distrito del Oeste de Texas, y envolvía la ley de usura. Con anterioridad al año 1869, la Ley de Texas había prohibido el cobrar un tipo de interés mayor del 12 por ciento, haciendo nulo el contrato, en cuanto al interés, cuando se había estipulado un tipo mayor del prescrito por la Ley. Por la Constitución de 1869, todas las leyes de usura fueron abolidas. Con anterioridad á la adopción de la Constitución de 1869, Daggs había entablado demanda contra Ewell, en la Corte de Circuito de los Estados Unidos, solicitando de dicha Corte, una sentencia con motivo de un pagaré y la ejecución de una hipoteca, devengando dicho pagaré intereses á un tipo de usura. Ewell había contestado la demanda, oponiendo la alegación de usura, y suplicando que se rebajaran los intereses al dictarse la sentencia. Mientras esta causa se hallaba pendiente, y antes de que se celebrara la vista por la Corte de Circuito, le Ley de Usura fué derogada por la Constitución de 1869, que había sido adoptada recientemente, y al apelarse para ante la Corte Suprema de los Estados Unidos, dicha Corte dijo:

"El efecto de la ley de usura de Texas, era el de poner la parte demandada en el caso de oponerse á la recuperación de los intereses que él se había comprometido á pagar, y dicha Ley era por su carácter una ley penal que imponía al prestador una pérdida hasta ese punto. Tal ha sido la interpretación general, si no uniforme, que se ha dado á semejantes leyes. Y asímismo se ha decidido generalmente, que la derogación de tales leyes, sin una una cláusula de reserva, producía un efecto retrospectivo de tal manera, que impedía la defensa para lo futuro, aún en demandas entabladas con motivo de contratos celebrados anteriormente. Y tales leyes, que producían ese efecto, han sido sostenidas en contra de todas las objeciones que se hacían fundadas en que privaban las partes de derchos adquiridos ó menoscababan la fuerza obligatoria de los contratos. Precisamente este punto fué decidido en las causas siguientes: Curtis v. Leavit, 15 N. Y. 9; Savings Bank v. Allen,

28 Conn. 97; Welch v. Wadsworth, 30 Conn. 149; Andrews v. Russell, 7 Blackf 474; Wood v. Kennedy, 19 Ind. 68, Town of Danville v. Pace, 25 Grat. 1; Parmelee v. Lawrence, 48 Ill. 331. Woodruff v. Scriggs., 27 Ark. 26."

Este caso es mucho más fuerte que el que nos ocupa, por cuanto se relaciona con la ley sustantiva, y se refiere á una pena que había sido ya incurrida á favor del demandado, mientras que el presente caso tiene solamente relación á una cuestión de procedimiento; de aquí que esta decisión es un fuerte apoyo para la que se halla en deliberación.

Es costumbre que al establecerse leyes derogatorias tales como las que estamos examinando, se inserte una cláusula de reserva, disponiendo que la adopción de la Ley no afectará ninguna causa pendiente de apelación; pero á falta de semejante cláusula de reserva, se presume que la Legislatura tuvo la intención de que tales causas habían de caer dentro dél alcance de la Ley.

También está bien establecido el principio análogo de que la derogación de una ley penal, que se efectúe mientras se halle pendiente un recurso de apelación, y antes de que la Corte de apelación haya dictado una resolución definitiva en cuanto á la causa pendiente ante ella, tiene el efecto de un indulto legislativo, y requiere que se sobresea definitivamente en dicha causa.

United States v. Tynen, 78 U. S. (11 Wall.) 95.
United States v. Passmore 4. U. S. (Dall) 373.
Abbott v. Com. (8 Watts. Penn. 517) 34 Am. Dec. 492.
Com. v. Duane (1 Binn. 610.) 2 Am. Dec. 499.
Keller v State (12 Md.) 71 Am. Dec. 597 & 598.
Sheppard v. State (1 Tex Ct. of App. Rep. 522.) 28 Am. Rep. 423.

Uno de los casos más satisfactorios en esta materia, y que aclara el caso que nos ocupa, lo mejor posible, se encuentra en 74 U. S. Reports. En un caso de apelación interpuesto contra sentencia dictada con motivo de Habeas

Corpus; pero en dicho caso se enuncian los principios en que deben basarse todos los casos ya sean civiles ó ya criminales. El dictámen del Tribunal fué leido por el Juez Presidente Chase, y no es necesario excusa alguna por citar liberalmente pasages de dicho dictámen. El Juez Presidente, en el dictámen del Tribunal, consigna las siguientes palabras:

"La primera cuestión necesariamente es la de competencia; pues si la Ley de Marzo de 1868, quita la jurisdicción definida en la de Febrero de 1867, es inútil, si no impropio entrar en una discusión de otras cuestiones.

Es de todo cierto lo que alegó el abogado del peticionario, ó sea que la jurisdicción de apelación de este Tribunal, no se deriva de leyes del Congreso. Dicha jurisdicción, hablando en sentido extricto, ha sido conferida por la Constitución. Pero ha sido conferida "con las excepciones y bajo los reglamentos, que estableciere el Congreso."

Es innecesario considerar si, en el caso de que el Congreso no hubiera establecido excepciones ni reglamentos, este Tribunal no hubiera podido ejercer jurisdicción general de apelación conforme á reglas prescritas por el mismo Tribunal. Pues, entre las primeras leyes establecidas por el primer Congreso, en su primera sesión, estaba la ley de 24 de Septiembre de 1789, para establecer los Tribunales judiciales de los Estados Unidos. Aquella ley proveyó para la organización de este Tribunal, y prescribió un Reglamento para el ejercicio de su jurisdicción.

Nosotros no estamos autorizados para investigar los motivos de la Legislatura. Sólo podemos examinar las facultades que tenga en virtud de la Constitución, y la facultad para establecer excepciones en cuanto á la jurisdicción de apelación de este Tribunal, ha sido conferida en palabras expresas.

¿Cuál es entónces el efecto de la Ley derogatoria sobre el caso que nos ocupa? No podemos abrigar dudas en cuanto á ésto. Sin competencia, el Tribunal no puede proceder en manera alguna, en ninguna causa. Jurisdicción es la facultad de determinar la ley. y cuando deje de existir, la único función que queda al Tribunal, es la de anunciar ese hecho, y sobreseer en la causa. Y esto no es menos claro según las autoridades, de lo que lo es según el principio.

Por otra parte, la regla general sostenida por los mejores autores

elementales, es que ''cuando se deroga una ley de la Legislatura, debe ser considerada, excepto en cuanto á transacciones pasadas y terminadas, como si nunca hubiera existido.'' Y al efecto de las leyes derogatorias sobre pleitos seguidos con arreglo á leyes derogadas, ha sido determinado por las decisiones de este Tribunal. Esta materia fué minuciosamente considerada en la causa de Morris v. Crocker, 13 Howard 429, y más recientemente, en la de Insurance Company v. Ritchie,' 5 Wallace, 541. En ambas causas se declaró que no se podía dictar sentencia en ningún pleito, después de la derogación de la Ley, con arreglo á la cual había sido entablado y seguido.

Es perfectamente claro, por lo tanto, que este Tribunal no puede proceder á dictar sentencia en la presente causa, porque ya no tiene jurisdicción de apelación; y no se cumple menos adecuadamente el deber judicial, declinando una jurisdicción no conferida, que ejerciendo firmemente la conferida por la Constitución y las leyes.

McCardle Ex Parte, 74 U. S. 7 (Wallace) page 512.

En una causa detenidamente considerada, el Juez Presidente Waite, en Octubre de 1878, al pronunciar el dictámen del Tribunal Supremo de los Estados Unidos y mientras se estaba discutiendo una cuestión casi idéntica á la de que se trata en el presente caso, dijo:

''Asimismo se ha determinado que cuando una ley que confiere jurisdicción, queda derogada sin reservación alguna en cuanto á causas pendientes ,todas esas causas desaparecen con la ley. (United States, v. Boisdore's Heirs, 8 How. 113; Mc Nulty v. Batty, 10 id. 72; Norris v. Crocker, 13 id. 429; Insurance Company v. Ritchie, 5 Wall. 541; Ex Parte McArdle, 7 id. 514; The Assessor v. Osbornes, 9 id. 567.''

''La Sección 847 de los Estatutos Revisados, referente al Distrito de Columbia, se halla en contradicción irreconciliable con la Ley de 1879. La primera nos concede jurisdicción cuando la suma en cuestión es de $1000 ó más; la segunda dice, en efecto, que no tendremos jurisdicción á menos que la suma exceda de $2.500. Es claro, por lo tanto, que la cláusula derogatoria de la Ley de 1879, comprende la citada sección de los Estatutos Revisados.''

''La Ley de 1879 es sin duda alguna previsora en su efecto. Ella no destruye ni anula lo que se ha hecho con arreglo á la antigua ley.

No destruye derechos derechos adquiridos. No anula ninguna sentencia ya dictada por este Tribunal, bajo la jurisdicción conferida por los Estatutos revisados, cuando estos estaban en vigor. Pero, la parte en un pleito no tiene derechos adquiridos para la interposición de un recurso de apelación para ante una Corte, contra sentencia dictada por otra. Tal privilegio, después de concedido puede quitarse, y si se quita, los procedimientos pendientes ante la Corte de apelación, cesan precisamente en el punto donde los encuentre la ley derogatoria, á no ser que se haga una disposición especial en sentido contrario. Los Estatutos Revisados concedieron á las partes el derecho de trasladar sus causas á este Tribunal, mediante recurso de apelación, y nos concedieron la autoridad para examinar nuevamente, revocar ó confirmar las sentencias ó decretos que en esta forma se nos presentaban. La derogación de aquella ley no destruye ni anula una apelación ya interpuesta, ni un auto ya expedido á petición de parte, pero sí, nos quita el derecho de oir y resolver la causa, si el asunto en cuestión es de menos valor que la suma fijada actualmente para nuestra jurisdicción. La apelación ó el auto quedan en pleno vigor. Pero nosotros rechazamos el pleito por haberse terminado nuestra jurisdicción.'' B. P. R. R. Co. v. Grant 98 U. S. 401 & 402.

De acuerdo con estos dictámenes, y apoyándolos casi en cada particular, están las siguientes causas, que han sido bien consideradas y falladas por los Tribunales de último recurso, en los diferentes Estados, á saber:

Tocd v. Landry, 5. Mart. (La. 459, 12 Am. Dec. 479.)
Hunt v. Jennings, 5 Blackf (Ind. 196, 33 Am. Dec. 465.
North Canal St. Road 10 Watt (Pa.) 351, 36 Am. Dec. 185.
Stephenson v. Doe, 8 Blackf. (Ind. 508, 46 Am. Dec. 489.)
Grant v. Grant, 12 S. Car. 29, (32 Am. Rep. 506.)
Lamb v. Schottler, 54 Cal. 319.
Smith v. District Ct. 4 Colo. 236.
Roush v. Morrison, 47 Ind. 414.
Thayer v. Seavey 11 Me. 284.
Cummings v. Chandler, 26 Me. 453.
Saco v. Gurney, 34 Me. 14.
MacNawhoc Plantation v. Thompson, 36 Me. 365.
Wade v. St. Mary's Industrial School, 43 Md. 178.

Springfield v. Hampden County, 6 Pick (Mass.) 501.
Com. v. Kimball, 21 Pick (Mass.) 373.
New London, etc. R. Co. v. Boston etc. R. Co. 102 Mass. 386.
Rice v. Wright, 46 Miss. 679.
Mosgrove v. Vicksburg, etc. R. Co. 50 Miss. 677.
Belvidere v. Warren. R. Co. 34 N. J. L. 195.
State v. Passaic, 36 N. J. L. 382.
State v. Jersey City, 38 N. J. L. 85.
Angel v. Hume, 17 Hun. (N. Y.) 377.
Butler v. Palmer,, 1 Hill (N. Y.) 324.
Hatfield Tp Roap, 5 Yeates (Pa.) 392.
Stover v. Immell, 1 Watts. (Pa.) 258.
Fenelon's Pettition, 7 Pa. St. 173.
Hampton v. Com. 19 Pa. St. 156.
Uwchlan Tp. Road, 30 Pa. St. 156.
State v. Brookover, 22 W. Va. 214.
Com. v. Beatty, 1 Watts (Pa. 382.)
Illinois etc. Canal v. Chicago, 14 Ill. 334.
French v. State, 53 Miss. 651.
Church v. Rhodes, (Supm. Ct. Spec. T.) 6 How. Pr. (N. Y.) 281.
Matter of North St. 1 Pearson (Pa.) 199;
Halcomb v. Boyton, 151 Ill 295.
U. S. v. Six Fermenting Tubs, 1 Abb. (U. S.) 269.

La ley, según se deduce de una corriente no interrumpida de autoridades, que nos guía en este caso, puede reasumirse como sigue:

La derogación de una ley que confiere jurisdicción, ya sea que se efectúe expresamente ó ya por deducción, á falta de una cláusula de reserva, quita el derecho de ejercer la jurisdición, y los procedimientos que se hallen pendientes con arreglo á dicha ley, ya sea en el Tribunal sentenciador, ó ya en el de apelación, deberán cesar en unión de la ley derogada. En adición á los casos citados anteriormente, se puede hacer referencia, en apoyo de esta proposición, á los siguientes:

Gurnee v. Patrick County 137 U. S. 144.
Sherman v. Grinnel 123 U. S. 680.

Wilkinson v. Nebraska 123 U. S. 288.
South Carolina v. Gailard 101 U. S. 438.
Mc Nulty v. Batty et. Al. 51 U. S. (10 How.) 78.
The United States v. Boisdore's Heirs 49 U. S. (8 How.) 120.
Bank of Hamilton v. Dudley 27 U. S. 2 Pet. 522.

A la luz de todas estas decisiones, podemos fácilmente ver que este asunto no envuelve ninguna cuestión de derechos adquiridos, ni de leyes retroactivas, ni ninguna otra cuestión, sino sencillamente la de la existencia de jurisdicción en este Tribunal para dictar sentencia en esta causa en la actualidad.

Al igual de la Corte Suprema de los Estados Unidos, este Tribunal deriva su jurisdicción de la Ley Orgánica con sujeción á tales restricciones y modificaciones como la autoridad legislativa tenga por conveniente hacer en la misma. Cuando, al principio se interpuso el recurso de apelación ante este Tribunal, este último tenía jurisdicción para resolverlo, y cuando aquí se pronunció el informe oral, la jurisdicción de esta Corte aún continuaba; pero desde que estaba dicho recurso en deliberación, la autoridad legislativa ha obrado y quitado el poder jurisdiccional que teníamos para resolver las cuestiones de que se trata.

Siendo tal el estado de la causa que se presenta para nuestra resolución, no queda nada que hacer para el Tribunal sino rechazar el recurso de apelación, y permitir que la sentencia dictada por el Tribunal de Distrito, en 17 de Diciembre último, quede en vigor. Por consiguiente, esta causa será rechazada por falta de jurisdicción.

*Desestimada.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados Hernández, Figueras y Wolf.