THE TEXAS COMPANY (P. R.) INC., peticionaria y apelante, *v.* RAFAEL SANCHO BONET, en su carácter de TESORERO DE PUERTO RICO, demandado y apelado.

Núm. 7603.—*Sometido:* Abril 20, 1938. *Resuelto:* Julio 13, 1938.

*James R. Beverley, R. Castro Fernández* y *José López Baralt,* abogados de la apelante; *Hon. Procurador General B. Fernández García* y *Emilio de Aldrey, Subprocurador,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

### EN MOCION DE RECONSIDERACION

Este caso fué resuelto en febrero once, último. 52 D.P.R. 658. La peticionaria presentó una extensa moción de reconsideración, oyéndose a las partes sobre la misma oralmente y por escrito en abril veinte siguiente. Las cuestiones envueltas son todas dignas de estudio y a todas hemos prestado la debida consideración, concluyendo finalmente que la reconsideración no procede.

Versa ésta sobre dos puntos esenciales, a saber: admisiones del demandado y procedimiento seguido para el cobro de las indemnizaciones.

En cuanto al primero, nada tenemos que agregar a lo que dijimos en nuestra opinión de febrero once. Hemos vuelto a examinar la estipulación de que se trata y no creemos que actuando en justicia pueda interpretarse como pretende la demandante.

El segundo entraña dos cuestiones. La del efecto retroactivo de la Ley núm. 45 de 1935 ((1) pág. 251), estudiada a la luz de lo que preceptúa su sección 34, sobre la cual nada nuevo en verdad dice la apelante, y la del procedimiento a seguir por el Tesorero para el cobro de las indemnizaciones, que es la que nos hizo vacilar y nos movió a oír otra vez a las partes.

En la citada opinión de esta corte de febrero once, *Texas Co.* v. *Sancho Bonet,* 52 D.P.R. 658, 667, se dijo:

"El hecho de que en todo caso sea la Ley núm. 45 de 1935 ((1) pág. 251) la que deba aplicarse y nunca la núm. 85 de 1928 (pág. 631), no tiene importancia porque de acuerdo con ambas procede el cobro por el tesorero como si se tratara de una contribución."

Y en su moción de reconsideración, después de transcribir parte del artículo 15 de la Ley núm. 45 de 1935, la apelante dice:

"¿En qué parte de dicho artículo y en qué forma se le da autoridad de ley al Tesorero de Puerto Rico para cobrar estas indemnizaciones por el método sumario de apremio, embargo y venta en subasta pública? Lo único que dice el artículo es que el Tesorero 'cobrará al patrono dicha compensación y gastos y una y otros constituirán un gravamen sobre toda la propiedad del patrono . . .' La ley del año 1928 en que intentó cobijarse el demandado en la corte inferior, sí disponía en su artículo 25 que el Tesorero 'cobrará al patrono dicha indemnización y gastos incurridos y una y otros constituirán un gravamen sobre toda la propiedad del patrono con el mismo efecto legal y prelación que si fuere una contribución impuesta sobre dicha propiedad . . .'

"Como las contribuciones se pueden cobrar por el método sumario es claro que de acuerdo con la ley del año 1928 las indemnizaciones, a las cuales se le daba el mismo efecto legal y prelación que a una contribución, podían ser cobradas por el método sumario. Pero es que la Ley del año 1935 no le da ese efecto legal o prelación, y sólo dice que el Tesorero las cobrará. Siendo ello así, se debe entender que las cobrará por medio de una acción plenaria."

Creemos que la ley aplicable es la del 1935 tantas veces citada y es por tanto a sus disposiciones a las que nos debemos atener.

Hemos visto que la propia apelante admite que de acuerdo con lo prescrito en la ley anterior—la de 1928—el Tesorero estaba autorizado para cobrar las indemnizaciones como si de contribuciones se tratara, esto es, por el procedimiento especial sumario que el estatuto autoriza. Ello simplifica la cuestión.

Veamos lo que disponía la ley del 1928. Por su sección 25 (Leyes de 1928, pág. 663) ordenaba:

"En el caso de que ocurriese un accidente a un obrero cuando trabajare para un patrono que en violación de la ley no estuviese asegurado, la Comisión Industrial determinará la indemnización que proceda más los gastos en que incurriere, y certificará su decisión al Tesorero de Puerto Rico, quien impondrá y cobrará al patrono dicha indemnización y gastos incurridos y una y otros constituirán un gravamen (*lien*) sobre toda la propiedad del patrono con el mismo efecto legal y prelación que si fuere una contribución impuesta sobre dicha propiedad; . . ."

Y la ley en vigor, o sea la de 1935, por su artículo 15 (Leyes de ese año, pág. 293), dispone:

"En el caso de que ocurriese un accidente a un obrero o empleado cuando trabajare para un patrono que en violación de la ley no estuviere asegurado, el Administrador del Fondo del Estado determinará la compensación que proceda más los gastos en el caso y certificará su decisión al Tesorero de Puerto Rico, quien cobrará al patrono dicha compensación y gastos, y una y otros constituirán un gravamen (*lien*) sobre toda la propiedad del patrono; *Disponiéndose*, que dicha compensación y gastos se declaran gravámenes preferentes a toda otra carga o gravamen por contribuciones o por cualquier otro concepto, con excepción de los créditos hipotecarios y los créditos refaccionarios y de las contribuciones sobre la propiedad gravada por tres años y la anualidad corriente que pese sobre la propiedad del patrono al trabarse embargo en garantía de tal compensación y gastos; . . ."

A nuestro juicio no hay duda de que la ley de 1928 autorizaba el cobro por la vía de apremio, y no creemos que pueda concluirse que por las enmiendas introducidas en la

del 1935 desapareciera la facultad del Tesorero para cobrar la indemnización por esa vía.

Se trata de la ejecución de una resolución final a la cual llegó determinado organismo administrativo en el ejercicio de sus facultades regladas mediante la debida consideración de los hechos y la ley, con audiencia u oportunidad de audiencia a las partes interesadas y contra la cual pudo recurrirse para ante las cortes de justicia. Por ella se condena a determinada persona o entidad al pago de determinada suma. Y por ambas leyes se envía al Tesorero para que la haga efectiva.

En la ley del 1928 se dice "quien (el Tesorero) impondrá y cobrará al patrono dicha indemnización y gastos incurridos" y la del 1935, "quien (el Tesorero) cobrará al patrono dicha compensación y gastos." Sólo queda eliminada en la del 1935 la palabra "impondrá", correctamente porque nunca fué el Tesorero el que imponía o determinaba la indemnización.

En la ley del 1928 se sigue diciendo "y una y otros constituirán un gravamen (*lien*) sobre toda la propiedad del patrono con el mismo efecto legal y prelación que si fuere una contribución impuesta sobre dicha propiedad," y en la del 1935 "y una y otros constituirán un gravamen (*lien*) sobre toda la propiedad del patrono." Se omiten las palabras "con el mismo efecto legal y prelación que si fuere una contribución impuesta sobre dicha propiedad," pero en su lugar aparece un *Disponiéndose* como sigue: "que dicha compensación y gastos se declaran gravámenes preferentes a toda carga o gravamen por contribuciones o por cualquier otro concepto, con excepción de los créditos hipotecarios y los refaccionarios y de las contribuciones sobre la propiedad gravada por tres años y la anualidad corriente que pesen sobre la propiedad del patrono al trabarse el embargo en garantía de tal compensación y gastos."

Lo que se hizo, pues, en 1935, fué concretar el significado de la prescripción general sobre el "mismo efecto legal y

prelación que si fuere una contribución'' que contenía la ley de 1928.

''Al interpretar el estatuto enmendatorio'' dijo la Corte Suprema de Arkansas, en *State* v. *Gus Blass Co.,* 105 S. W. (2d) 853, 858, ''debemos seguir las reglas de hermenéutica estatutaria bien establecidas, y una de ellas es que cuando vuelve a decretarse un estatuto sustancialmente en la misma forma que el anterior, debe presumirse que los legisladores no tuvieron la intención de hacer otros cambios que aquéllos que surjan claramente del lenguaje del nuevo estatuto.''

Si se admite que el Tesorero tenía el poder y el deber de cobrar la compensación por la vía de apremio en 1928 necesariamente se admite también que lo sigue teniendo en 1935.

Ese poder emana del acto mismo del encargo. ''El Tesorero recaudará y custodiará los fondos públicos...y desempeñará las demás funciones que prescribiere la ley,'' ordena la Carta Orgánica de 1917 en su artículo 15.

Y ya hemos visto que por ambas leyes, por la de 1928 y por la de 1935, se le impuso el deber de cobrar la indemnización de que se trata, cuyos efectos legales ahora especificados, siguen siendo los mismos que los de una contribución, deber que lógicamente y como ha sido uniformemente interpretado, lo cumple siguiendo los trámites que fija el Código Político para su ejercicio o sea mediante notificación de embargo de propiedad del deudor que produce el mismo efecto que un fallo judicial sobre la propiedad embargada (art. 315 del Código Político) y venta en pública subasta de la propiedad con sujeción a la ley (arts. 335 al 344 del Código Político).

¿De qué otro modo puede y debe cobrar el Tesorero sumas que se le ordena que cobre mediante la ley? Cuando el legislador ordenó que se siguiera otro procedimiento—el de la Ley núm. 102 de 1925 (pág. 943), vigente hasta 1928—no fué al Tesorero a quien encomendó el cobro si que dispuso que una vez que la Comisión de Indemnizaciones a Obreros determinara la indemnización ''lo comunicará al Attorney General

para que entable contra dicho patrono en una corte de jurisdicción competente la acción correspondiente para el cobro de dicha suma.''

Aunque reconocemos que la Legislatura pudo y debió hablar con más claridad, su actuación implica con tanta fuerza su propósito, que nos sentimos antes y seguimos sintiéndonos ahora justificados en resolver que el procedimiento seguido por el demandado para el cobro de las indemnizaciones en este caso está autorizado por la ley.

*Debe declararse no haber lugar a la reconsideración solicitada.*